UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

In re:

NORTH BAY VILLAGE, LLC  Case No.: 9:10-bk-03090-ALP
Chapter 11 Case

Debtor.  EMERGENCY RELIEF REQUESTED
_____/

## DEBTOR'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL

Chapter 11 Debtor, NORTH BAY VILLAGE, LLC, ("North Bay" or "Debtor" as appropriate), by and through its undersigned counsel, pursuant to this Court's Administrative Order No. TPA-2005-2 entered on or about January 31, 2005, 11 U.S.C. 363, Rules 1007(d), 4001, 9014, of the Federal Rules of Bankruptcy Procedure and Rule 1007-2(b) of the Local Rules for the United States Bankruptcy Court for the Middle District of Florida, files this their Debtor's Emergency Motion for Authority to Use Cash Collateral ("Cash Collateral Motion") seeking authority to use cash collateral ("Cash Collateral" and "Cash Collateral Motion" as appropriate) and, in support thereof, state as follows:

**General Background**

1.  The Debtor, North Bay Village, LLC, was formed on or about October 9, 2002, as a Florida Limited Liability Company and James A. Nashman is its sole managing member.

2.  North Bay, along with its co-tenant, CKS Investment Company, LLP ("CKS"), a Minnesota Limited Liability Partnership, acquired property located at 26381 S. Tamiami Trail,

Bonita Springs, Florida 34134, as tenants in common by warranty deed dated July 1, 2003 ("Property"). A copy of the deed is attached hereto as Exhibit "A".

3. Earlier, and in anticipation of the acquisition of the Property, on or about February 4, 2003, Craven Shaffer North Bay in turn entered into a management agreement with Pelican Bay Construction and Management Services, LLC ("Pelican Bay") and Grand Bay Properties, LLC ("Grand Bay")to provide development, management, operation, maintenance and brokerage services to North Bay and CKS.

4. Later on June 26, 2003, North Bay and CKS entered into a Cotenancy and Agency Agreement with recently formed Craven-Shaffer-North Bay Village, LLC ("Craven Shaffer North Bay") for Craven Shaffer North Bay to act as North Bay and CKS' agent with respect to the Property.

5. On or about September 14, 2006, North Bay and CKS executed a Consolidated Renewal Promissory Note in the amount of $23,500,000.00, in favor of CWCapital LLC ("CWCapital"), which provided in pertinent part:

**2.04** **Exculpation**

(a) Borrower shall be liable upon the indebtedness evidenced hereby and for the other obligations arising under the Loan Documents to the full extent (but only to the extent) of the Collateral, including the rents, issues, income and profits from the Security Property…

("Nonrecourse Note"). A copy of the Nonrecourse Note is attached hereto as Exhibit "B".

6. Similarly, on or about September 14, 2006, North Bay and CKS executed an Assignment of Leases and Rents with respect to the Property, in favor of CWCaptial ("Assignment of Rents"). A copy of the Assignment of Rents is attached hereto as Exhibit "C".

7. Consistent with the Nonrecourse Note and the Assignment of Rents, on or about September 14, 2006, North Bay and CKS executed an Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents and Security Agreement with respect to the Property, in favor of CWCaptial ("Mortgage"). A copy of the Mortgage is attached hereto as Exhibit "D".

8. Later, on or about April 4, 2009, Wells Fargo Bank, N.A., in its Capacity as Trustee for the Registered Holders of Cobalt CMBS Commercial Mortgage Trust 2006-C1, Commercial Mortgage Pass-Through Certificates, Series 2006-C1 assigned ("Assignment"), among other documents, the Nonrecourse Note, Assignment of Rents and Mortgage to Bank of America, N.A., in its Capacity as Trustee for the Registered Holders of Cobalt CMBS Commercial Mortgage Trust 2006-C1, Commercial Mortgage Pass-Through Certificates, Series 2006-C1 ("Assignee").

9. CWCapital continues to act as the loan servicer for the Assignee.

10. North Bay filed its Chapter 11 Petition on February 12, 2010 ("Petition Date").

**Basis for Relief**

11. The Debtor is operating its business and managing its Property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

12. The Debtor will promptly file its Case Management Summary.

13. No trustee or examiner has been appointed for North Bay.

14. No committee has been appointed for North Bay.

15. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

16. The subject matter of this Cash Collateral Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

17. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

18. North Bay and CKS, through Pelican Bay, Grand Bay and Craven Shaffer North Bay, continue to lease, manage, operate and maintain the Property.

19. Given substantial declines in the Southwest Florida real estate market, reduced lease rates, the financial difficulties of a number of the tenants at the Property, tenant defaults and tenant vacancies, operating income for the Property has declined, as has the value of the Property since North Bay acquired it in 2003.

20. Notwithstanding the same, North Bay and CKS, through Pelican Bay, Grand Bay and Craven Shaffer North Bay continue to lease nearly 100,000 square feet of retail space and collects approximately $1,661,949.25 in annual rent from the Property.

21. The annual costs necessary to operate the Property total approximately $595,560.00.

22. The remaining net operating income is insufficient to service the debt asserted to be owed to the Assignee.

23. The Assignee asserts a lien on the Property and on the rents and profits from the lease activities on the property.

24. The Property is currently being leased to at least ten (10) separate tenants all of whom have clients, customers, vendors, creditors and employees who rely upon the continued use and enjoyment of the leasehold estates at the Property afforded by North Bay.

25. The maintenance and operating expenses for the Property must be promptly paid in order for the tenants use and enjoyment to remain uninterrupted.

26. Especially in the current economy, any disruption to the operation of ten business locations could be catastrophic for such businesses and their clients, customers, vendors, creditors and employees.

27. North Bay desires to continue to collect rent, pay operating expenses pursuant to an agreed budget and segregate any excess funds to the Assignee to reduce the outstanding principal this Court will determine is due to the Assignee pursuant to 11 U.S.C. 506 to be paid pursuant to a confirmed Chapter 11 Plan.

28. North Bay anticipates filing a Motion to Value the Property and to establish the Assignee's secured rights in the property as well as its right to repayment on account of its interest in the Property.

29. Such continued operations will both preserve and protect the Property collectively for the benefit of the Debtor and the Assignee and will maximize the value of the Property.

30. Without the use of the cash collateral, the Debtor will be required to cease operations, substantially impairing the value of such Property.

31. No known creditor, other than the Assignee, asserts a lien on either the Property or its proceeds.

**Adequate Protection Proposed**

32. The Debtor will circulate a Monthly Budget in advance of or at the upcoming hearing on this Cash Collateral Motion.

33. Based upon the Monthly Budget, after deducting sufficient cash to pay ongoing operating expenses, the Debtor will be able to pay net amounts into a segregated interest bearing account to be disbursed to the Assignee as a principal reduction to pay down any allowed amount

of the Assignee's secured claim as may be determined by this Court and in conjunction with confirmation of a Chapter 11 Plan.

34. The Assignee's interest in the Property will not erode by and through the Debtor's continued use of the Property and related cash collateral, as described above.

35. In actuality, the use of the Property will enhance the value of the Property by its continued use and occupancy. It is expected that the Property, if vacant, would rapidly decline in value.

36. The Debtor reserves the right to modify this Cash Collateral Motion until this Court rules on the relief requested in this Cash Collateral Motion and enters an Order on the the same.

WHEREFORE, the Debtor respectfully requests this Court enter an Order Granting this Cash Collateral Motion, providing for the use of the Assignee's cash collateral (to collect rents, pay operating expenses pursuant to an agreed budget, deposit and safeguard cash collateral) to the extent set forth above and granting such other and further relief as this Court deems just and appropriate.

**Dated: February 12, 2010**

        **SHUMAKER, LOOP & KENDRICK, LLP**

        By: /s/ Steven M. Berman
           **Steven M. Berman, Esquire**
           **Fla. Bar No. 856290**
           101 East Kennedy Blvd., Suite 2800
           Tampa, Florida 33602
           Telephone: (813) 229-7600
           Facsimile: (813) 229-1660
           **Counsel for North Bay Village, LLC**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing **Debtors' Emergency Motion for Authority to Use Cash Collateral** was served electronically on the **Debtor**, the **Office of the United States Trustee**, **Denise D. Dell-Powell, Esq.**, counsel for the Assignee, Burr & Forman, LLP, 450 South Orange Ave., Suite 200, Orlando, FL 32801, **all creditors** and **any parties who have requested electronic service** of pleadings, motions and other papers filed in the cases, the Local Rule 1007-2(b) list of interested parties as well as any other persons or parties who were served via the Court's Notice of Electronic Filing as of the 15th day of February, 2010.

        /s/ Steven M. Berman
        Steven M. Berman