# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

In re:

**NORTH BAY VILLAGE, LLC**                    **Case No.: 9:10-bk-03090-ALP**
                                              **Chapter 11 case**

    **Debtor.**

_____/

## DEBTOR'S SUPPLEMENTAL MOTION IN LIMINE
## AND TO STRIKE TESTIMONY OF RICHARD GAUDET

North Bay Village, LLC, as Debtor-in-Possession ("North Bay Village" or "Debtor," as appropriate), pursuant to Fed.R.Civ.P. 26, Fed.R.Bankr.P. 7026 and 9014, Rule 702 of the Federal Rules of Evidence, and other applicable law, hereby moves to exclude the expert testimony of Richard Gaudet, and, in support thereof, states as follows:

1.      On February 12, 2010, North Bay Village filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code ("Petition Date"). The Debtor's assets consist of the real property and improvements located at 26381 S. Tamiami Trail, Bonita Springs, Florida 34134 ("Property") as well as other personal property.

2.      In conjunction with the Debtor's submittal of prior plans of reorganization, CWCapital Asset Management, LLC ("CWCapital")—the Debtor's largest creditor and vehement opponent to confirmation—disclosed its intent to have Richard Gaudet testify as an expert at confirmation.

3.      On November 15, 2010, the Debtor filed its initial Motion to Strike Testimony and Motion in Limine with respect to the testimony of Richard Gaudet (Doc.

189).

4.     On December 20, 2010, the Debtor filed its Third Amended Chapter 11 Plan of Reorganization Dated as of December 20, 2010 (Doc. 216) ("Plan").

5.     The hearing to consider confirmation of the Plan is scheduled for February 18, 2011.

6.     On February 8, 2011, CWCapital produced the expert report of Mr. Gaudet, which states that Mr. Gaudet will testify as to the feasibility of the Debtor's Plan and whether the treatment of CWCapital in Class 3 of the Plan "reflect(s) financing terms reasonably available in the current financial markets. A true and correct copy of Mr. Gaudet's Expert Report is attached as **Exhibit 1.**

7.     In conjunction with CWCapital's disclosure of Mr. Gaudet as an expert for confirmation, the Debtor deposed Mr. Gaudet, first on November 11, 2010 and then on February 11, 2011. Transcripts of Mr. Gaudet's deposition testimony are attached as **Exhibits 2 and 3**, respectively. The transcripts shall be referred to herein as "Gaudet Tr., Vol. I" and "Gaudet Tr., Vol. II."

8.     The decision to admit or exclude the testimony of a proposed expert is within the discretion of the trial court. *Cook v. Sheriff of Monroe County, Fla.,* 402 F.3d 1092, 1103 (11th Cir. 2005); *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004). A court enjoys considerable leeway in determining the admissibility of expert testimony. *Id.*

9.     The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, as explained by *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), and its progeny such as, *Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. 2005).

10.     The proponent of expert testimony carries a substantial burden under Rule 702. "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

11.     Thus, the proponent must demonstrate the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact. *Frazier*, 387 F.3d at 1260 ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion"); *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). "[C]arrying this burden requires more than 'the *ipse dixit* of the expert.' " *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.,* 402 F.3d 1092, 1113 (11th Cir. 2005) (quoting *Michigan Millers Mut. Ins. Corp. v. Benfield,* 140 F.3d 915, 921 (11th Cir. 1998)).

12.     The trial court must function as a "gatekeeper" and engage in a rigorous three-part inquiry to determine if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of "scientific, technical, or specialized expertise," to understand the evidence or to determine a fact in issue. *Frazier*, 387 F.3d at 1260; *see also Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291-92 (11th Cir. 2005).

13.     The Eleventh Circuit refers to these requirements as the "qualification," "reliability," and "helpfulness" prongs that must be individually analyzed. *Id*. The trial

court's "gate keeping" function requires the trial court to "conduct an exacting analysis of the foundations of expert opinions" to ensure they meet the standards for admissibility under Rule 702. *Frazier*, 387 F.3d at 1260. Thus, even if a witness is qualified as an expert regarding a particular issue, the process used by the witness in forming her expert opinion must be sufficiently reliable. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1342 (11th Cir. 2003); *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1257 (11th Cir. 2002).

14. Further, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261. "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994).

15. Many courts have excluded testimony when they determine the witness is testifying in an area outside of his expertise, even if it is arguably related to the witness's areas of expertise. *See, e.g. In re Williams Secs. Litig. - WCG Subclass*, 496 F. Supp. 2d 1195, 1245 (N.D. Okla. 2007), aff'd, 558 F.3d 1130 (10th Cir. 2009) (excluding expert generally qualified to perform a discounted cash flow analysis, because he did not possess industry-specific expertise); *Broadcort Capital Corp. v. Summa Medical Corp.,* 972 F.2d 1183, 1194 (10th Cir. 1992) (attorney with "some education and training in the field" was not qualified "as an expert in the securities area"); *Wheeling Pittsburgh Steel*

*Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001); *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997).

16. According to his report and deposition testimony, Mr. Gaudet will testify regarding: (A) feasibility of the Debtor to meet its operating expenses and Plan payments on a periodic basis, (B) the value of the Debtor's property at the end of the ten (10) repayment term resulting the balloon payment, (C) the existence of an efficient lending marketplace for similar loans and the commercial reasonableness of the Debtor's Plan.

17. However, taken in reverse order, Mr. Gaudet specifically testified that there is no efficient marketplace for refinancing of commercial property like the Property—either in Southwest Florida, Georgia, North Carolina or North Florida. (Gaudet Tr., Vol. II, pg 44-45). Pursuant to well-established law, once it is determined that no efficient marketplace exists for exit financing for Chapter 11 debtors, the Court uses the formula approach set forth in *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004) based on the prime rate of interest adjusted by a risk factor of one to three percent. *See SPCP Group, LLC v. Cypress Creek Assisted Living Residence, Inc.*, 434 B.R. 650 (M.D.Fla. 2010). Therefore, any further testimony from Mr. Gaudet regarding potential financing terms of is irrelevant, and not helpful to the Court, and should not be permitted.[1]

18. Next, with respect to Mr. Gaudet's view of the value of the Debtor's property ten years from now, the undersigned was unable to find any appraiser to provide an appraisal of the property's value as it will be ten (10) years from now. Moreover, Mr.

---

[1] Interestingly, in the *one* commercial loan Mr. Gaudet was able to find in the past year in Southwest Florida, Mr. Gaudet testified that the terms were LIBOR (the "London Interbank Offered Rate") plus 300 to 375 basis points, which is actually a smaller interest rate than the prime plus two percent provided in the Debtor's Plan.

Gaudet candidly admitted he is not an appraiser, has no appraisal qualifications and has never acted as an appraiser in or out of court.

19.     Mr. Gaudet himself, despite no experience as an appraiser and no certification of an appraiser, opines that the value of the property in ten (10) years will not allow the Debtor to make the balloon payment required by the Plan.  Nevertheless, Mr. Gaudet admits that he cannot know what the real estate lending market will be in 10 years or what the equity market will be in 10 years, nor can he reliably make *any* determination as to the actual value of the property in 10 years.  (Gaudet Tr., Vol. II, pg 37-38).

20.     Indeed, as noted by the Honorable Michael G. Williamson in *Cypress Creek,* , there can be no evidence as to what the market might be in the future. *Cypress Creek,* 434 B.R. at 656.   Accordingly, Mr. Gaudet's methodology for determining whether the Plan is feasible is flawed, and testimony based on this flawed methodology should not be permitted.  Such testimony falls far short of the expert witness standards prior to the Supreme Court's enunciation in *Daubert*, much less after *Daubert* and its progeny.  The *ipse dixit* of expert testimony is no longer admissible in lieu of competent Rule 702 testimony.

21.     Finally, Mr. Gaudet should similarly be prohibited from providing his feasibility opinion because such opinion is not based on sound methodology.  In making his determination regarding feasibility, Mr. Gaudet formulates an artificially high monthly payment obligation using an unconventional method of setting an amortized payment.  His methodology of dividing up the principal obligation over one-hundred (180) equal payments and adding interest on top of such payments is wholly inconsistent

with normal accounting and finance models and formulae for determining monthly note payments. Mr. Gaudet could not support his conclusions as to feasibility with reliable methods or the application of reliable methods to the data at hand or to derive any conclusion from such an application of methods to data. Additionally, Mr. Gaudet's testimony failed to take into account the Debtor's actual cash flow and expenses which unquestionably reveal its feasibility.

22. As a result Mr. Gaudet's proposed testimony in all three categories fail to meet the Eleventh Circuit's "qualification," "reliability," and "helpfulness" prongs that must be individually analyzed pursuant to its decision in *Frazier*.


WHEREFORE, the Debtor respectfully requests this Court enter an Order granting the instant Motion, excluding the testimony of Richard Gaudet at the Continued Confirmation Hearing on February 18, 2011, and affording the Debtor such other and further relief as this Court deems just and appropriate.

**SHUMAKER, LOOP & KENDRICK, LL**P

By: /s/ Steven M. Berman
      Steven M. Berman, Esq.
      Florida Bar No.: 856290
      Hugo S. deBeaubien, Esq.
      Florida Bar No.: 58100
      101 E. Kennedy Blvd., Suite 2800
      Tampa, Florida 33602
      Phone (813) 229-7600
      Facsimile (813) 229-1660
      *Attorneys for North Bay Village, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 16, 2011 a true and correct copy of the foregoing was served via CM/ECF Electronic Notice or by regular United States Mail to the **Debtor**, the **Office of the United States Trustee**, **Denise Dell-Powell**, 450 S. Orange Avenue, Suite 200, Orlando, FL 32801, as well as any other persons or parties who were served via the Court's Notice of Electronic Filing.

/s/ Steven M. Berman
**Attorney**